IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) MARGARET K. DEY, an individual ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> (1) SENTRY SELECT INSURANCE ) <br> COMPANY, a Wisconsin corporation ) <br> ) <br> ) <br> ) <br> Defendant. ) | 16-CV-318-RAW <br><br> Case No. ~~XXXXX~~ ~~7:16-cv-~~_____ <br><br><br> **JURY TRIAL DEMANDED** <br> **ATTORNEY'S LIEN CLAIMED** |

## COMPLAINT

COMES NOW, the Plaintiff, Margaret K. Dey ("Plaintiff"), and for her claims against the Defendant, Sentry Select Insurance Company, a Wisconsin corporation ("Defendant"), alleges and states as follows:

### I.

### JURISDICTION

1. Plaintiff is a citizen of the state of New Jersey, and resident of Allentown, Monmouth County, New Jersey, who owns real and personal property in Muskogee County, Oklahoma.

2. Upon information and belief, Defendant is a Wisconsin corporation.

3. Defendant issued to Plaintiff the "Ultraguard" insurance policy that is the subject of this lawsuit and which covers the loss or damage to the Plaintiff's personal property. Said insurance policy was entered into in Checotah, McIntosh County, State of Oklahoma.

4. In accordance with 28 U.S.C. § 1332, jurisdiction is properly vested in this Court on the basis of diversity with the amount in controversy exceeding $75,000.00, exclusive of interest and costs.

## II.

## FACTUAL SUMMARY

5. On or about July 18, 2015, Plaintiff's 2013 John Deere 5100 tractor ("Tractor") was struck ("Incident") by a motor vehicle owned by a third party ("Third Party").

6. The Incident resulted in extensive damage to the Tractor and rendered the Tractor inoperable.

7. Plaintiff and Defendant are parties to a contract where Defendant was to provide, and Plaintiff was to pay for, an "Ultraguard" insurance policy covering loss or damage to the Tractor ("Policy").

8. All premiums owed under the Policy at the time of loss/damage were paid and the Policy was effective when the Incident occurred and remains effective as of the filing of this Complaint.

9. As required by the Policy, Plaintiff notified Defendant of the loss, including a description of the property involved and the Incident, and took reasonable steps to protect the Tractor from further damage as directed by Defendant.

10. Following the Incident, Defendant arranged for the Tractor to be transported to Grissoms, LLC, an Oklahoma limited liability company ("Grissoms"), located in Checotah, Oklahoma. Defendant represented to Plaintiff that Grissoms was the company in the area it regularly engaged for assessing tractor damage.

11. Upon information and belief, Grissoms inspected the Tractor and prepared an estimate, which, among other things, called for replacing the Tractor's front axle, as the axle was damaged and continued to leak oil and fluid.

12. On or about August 18, 2015, Grissoms informed Plaintiff's agent of the damage, which was estimated to be in excess of $15,000.00, and reported that the front axle needed to be replaced ("Original Estimate").

13. Upon information and belief, Grissoms amended the Original Estimate at the direction of Defendant. Grissoms then created another estimate which omitted replacement of the front axle and presented inaccurate estimated repair costs in the amount of SEVEN THOUSAND NINE HUNDRED EIGHTY-FOUR and 66/100 DOLLARS ($7,984.66) ("Second Estimate").

14. Upon inquiry, Defendant's adjuster assigned to Plaintiff's claim ("Adjuster") was unable to explain, with clarity or specificity, any legitimate reason for the creation of the Second Estimate. Adjuster stated that upon suspending the Tractor on a lift (which removed all weight from the axle) the axle ceased leaking any oil or fluid. Conspicuously, neither Defendant nor any of Defendant's agents have been able explain why Grissoms would have changed its original position relative to the axle and, in fact, generally deny any knowledge of the Original Estimate or ever discussing the same with Grissoms.

15. Grissoms created the Second Estimate without removing and/or dissembling the axle, even though the axle was clearly leaking oil, and, thus, without a thorough evaluation of the damage thereto. Moreover, upon information and belief, Grissoms created the Second Estimate following, and by virtue of, Defendant's bad faith communications.

16. After learning that Grissoms no longer intended to conduct the necessary and proper repairs per the previously conveyed Original Estimate (including axle replacement), Plaintiff engaged Rick's Tractor Repair, LLC located near Ketchum, Oklahoma ("Rick's"), to inspect the Tractor at Grissoms' place of business. Upon inspection, Rick's questioned Grissoms about the validity of the Second Estimate, considering the Tractor was still leaking oil and fluid and that placing the Tractor on a lift was not indicative of how the Tractor would operate under weight-bearing load. Upon information and belief, per discussion with Rick's, Grissoms conceded these points as relevant and applicable.

17. Subsequent to the inspection at Grissoms, Rick's transported the Tractor to its repair facility near Vinita, Oklahoma, where the Tractor continued to leak oil and fluid more than seven (7) months after the Incident. Rick's prepared and provided to Plaintiff a repair estimate in the amount of EIGHTEEN THOUSAND FOUR HUNDRED SEVENTY TWO and 57/100 DOLLARS ($18, 472.57) ("Rick's Estimate").

18. Rick's commenced dissembling the axle and discovered a fracture in the front axle unit in very close proximity to the area where oil and fluid was observed seeping from the exterior axle housing. Upon reporting this discovery to Defendant, Adjuster stated that if there was a fracture, then the axle needed to be replaced.

19. Defendant sent a local adjuster to Rick's who viewed the damaged axle unit in its disassembled state. Despite observing the identified fracture, Defendant, to date, has refused to provide coverage for the full amount of Tractor damages in clear violation of its contractual obligations under the Policy.

20. In the event of a covered loss, Plaintiff must provide the Defendant an opportunity to inspect the property and records proving the loss. To the extent Defendant engaged in inspection of the Tractor, Plaintiff continuously complied with Policy requirements.

21. In clear contravention of the Policy terms, Defendant and its agents, amongst other acts,: (i) demanded the axle be sent for atypical and uncustomary testing considering the type of tractor; (ii) stated that Defendant would not cover any claims for reimbursement associated with axle replacement without further testing and inspection in addition to at least two (2) prior inspections; (iii) requested that the axle unit be released to Defendant without authority obligating Plaintiff to comply with said request; (iv) indicated (surprisingly) that Adjuster knew a fracture would be discovered; and (v) systematically obstructed the claim and coverage process by continually imposing additional demands upon Plaintiff's good faith completion of prior demands.

22. Upon it becoming apparent that Defendant was refusing to comply with its coverage obligations, Plaintiff properly directed Rick's to repair the Tractor. The actual repair expenses (including tow/haul charges) totaled TWENTY-ONE THOUSAND SEVEN HUNDRED NINETY-TWO and 69/100 DOLLARS ($21,792.69) ("Repair Costs"). Plaintiff paid the Repair Costs directly to Rick's. Summarily, the front axle unit had to be replaced, along with the fenders, a front wheel and tire, and various other components.

23. On or about August 6, 2015, Plaintiff filed a lawsuit in the District Court in and for Muskogee County, State of Oklahoma, Case. No. CJ-2015-306 ("Lawsuit") requesting judgment be entered against Third Party for damages sustained as a result of the Incident, including Tractor repair and related costs.

24. Through the discovery phase of the Lawsuit, Third Party obtained the Second Estimate.

25. Upon information and belief, Defendant's agents engaged in improper and unauthorized communications with the Third Party insurer's representative during the pendency of the Lawsuit. Defendant's agent communicated its intent to stand steadfast relative to the Second Estimate. This unauthorized communication directly and negatively impacted Plaintiff's ability to obtain a judgment and/or settlement amount reflective of the total amount of damage arising from the Incident.

26. Third Party refused to pay the total Repair Costs. Upon information and belief, based, in large part, on the Second Estimate, Third Party served Defendant with an Offer to Confess Judgment in the amount of $35,000.000, inclusive of attorney's fees and costs. The Second Estimate created litigious uncertainty (bolstered by Defendant's improper communications with Third Party) which increased the risk that Plaintiff could be liable for Third Party's attorney's fees and costs.

27. In light of increased litigation risks and mounting attorney's fees caused by the Second Estimate and Defendant's above-stated improper communications, Plaintiff was forced to accept and agree, in term, to a settlement amount for the Tractor damage claim equal to the Second Estimate. The settling parties acknowledge that the amount paid for the tractor damages (and the other claims) is not intended to fully compensate Plaintiff for damages incurred by virtue of the Incident, but, rather, the settlement amount is merely a compromise of a disputed claim.

## III.

## CLAIMS FOR RELIEF

### Count I–Breach of Contract

28. Plaintiff incorporates by reference Paragraphs 1 through 27 as though set forth fully herein.

29. Defendant is contractually obligated under the Policy to pay Plaintiff's actual Tractor Repair Costs.

30. As reflected by the actual Repair Costs, Defendant is contractually obligated to pay to Plaintiff TWENTY-ONE THOUSAND SEVEN HUNDRED NINETY-TWO and 69/100 DOLLARS ($21,792.69).

31. Defendant has refused to pay Plaintiff the full amount of Repair Costs as required under the Policy.

32. Defendant has breached its contract with Plaintiff, and Plaintiff has suffered damages as a direct and proximate result.

33. As a result of Defendant's breach of contract, Plaintiff seeks to recover damages from Defendant in the amount of TWENTY-ONE THOUSAND SEVEN HUNDRED NINETY-TWO and 69/100 DOLLARS ($21,792.69), plus prejudgment and post-judgment interest, and attorney's fees and costs to the extent permitted by law.

### Count II—Bad Faith

34. Plaintiff incorporates by reference Paragraphs 1 through 33 as though set forth fully herein.

35. During the claim process, Defendant asserted, at various times, a number of different justifications for refusing to pay to Plaintiff the full amount of the Repair Costs.

36. Defendant's assertions were false.

37. Defendant's false assertions were oppressive, fraudulent, outrageous, vexatious, reckless, indifferent to the rights of others, willful, wanton, and/or made for a dishonest purpose.

38. Defendant's false assertions constituted common-law bad faith.

39. Plaintiff has been damaged by Defendant's bad faith.

40. Defendant is liable to Plaintiff on this Count for compensatory and punitive damages.

41. Defendant has breached its contractual obligation by refusing to exercise good faith and fairly deal with Plaintiff in the processing of Plaintiff's claim for loss covered by the Policy and by refusing to honor the terms of the Policy.

42. Evidence of Defendant's bad faith includes, without limitation, the following: (i) Defendant, upon information and belief, caused Grissoms to modify its Original Estimate resulting in the reduced and limiting Second estimate; (ii) Defendant knew, or should have known, that there was no reasonable basis for informing the Third Party's insurer—during ongoing litigation and settlement negotiations—of Plaintiff's claim, Policy, coverage thereunder, or any other information, including without limitation Defendant's inaccurate and incomplete Second Estimate; (iii) Defendant knew, or should have known, this unauthorized communication would detrimentally impact the outcome of Plaintiff's pending litigation; and (iv) there was no reasonable basis for denying coverage of the Repair Costs, which reflects a true and accurate assessment of the Tractor damage.

43. Defendant's bad faith conduct left Plaintiff without any recourse but to initiate this lawsuit, and thereby incur unnecessary legal fees and costs, to obtain the coverage due to Plaintiff under the Policy.

44. Defendant's conduct constitutes bad faith under the common and statutory law of Oklahoma.

45. Because of its bad faith handling of Plaintiff's claim for covered loss, Defendant is liable to Plaintiff for punitive damages and consequential damages, including without limitation, attorney's fees and other expenses in bringing this action, lost interest on amounts wrongfully withheld by Defendant, amounts lost in the Lawsuit due to Defendant's bad faith contact with Third Party and its insurer, and lost time and productivity.

46. By reason of Defendant's above-stated bad faith, Plaintiff seeks to recover damages from Defendant in an amount in excess of $75,000.00, plus attorney's fees and costs, and any other relief this Courts deems appropriate.

## Count III—Tortious Interference with Prospective Economic Relations

47. Plaintiff incorporates by reference Paragraphs 1 through 46 as though set forth fully herein.

48. Plaintiff possessed evidence reflecting the true and accurate Repair Costs during the Lawsuit.

49. Plaintiff believes and therefor avers that Defendant either intentionally, whether knowingly or with substantial certainty as to the ancillary consequences, interfered with Plaintiff's Lawsuit and settlement negotiations with Third Party.

50. Defendant was not entitled to inform Third Party and/or its insurer of Plaintiff's claim, Policy, coverage thereunder, or any other information, including without limitation Defendant's incomplete and inaccurate Second Estimate. Moreover, Defendant was not entitled to inform Third Party and its insurer of Defendant's intent to refuse coverage for the full amount of Plaintiff's documented Repair Costs.

51. Plaintiff suffered damage as a direct and proximate result of Defendant's tortious interference with the Lawsuit due to Defendant's contact with Third Party's insurer. Defendant's interference directly and negatively impacted the amount Plaintiff would eventually recover in the Lawsuit. Defendant's contact with Third Party and its insurer was a violation of the fiduciary duty that Defendant owed Plaintiff, and the improper and unfounded creation of the Second Estimate caused litigious uncertainty in the Lawsuit. This uncertainty forced Plaintiff to accept and agree, in term, to a reduced amount in settlement and necessitated commencement of this action.

52. As a result of Defendant's tortious interference with Plaintiff's prospective economic relations, Plaintiff seeks to recover damages from Defendant in an amount exceeding $50,000.00, plus costs and attorney's fees, and any other relief this Court deems appropriate.

## IV.

### REQUESTS FOR RELIEF

WHEREFORE, Plaintiff, Margaret K. Dey, prays for judgment against Defendant, Sentry Select Insurance Company, as follows:

a) For Defendant's breach of contract, an amount equal to $21,792.69, plus prejudgment and post-judgment interest, and attorney's fees and costs;

b) For Defendant's bad faith, an amount exceeding $75,000.00, including without limitation punitive damages and consequential damages, attorney's fees and costs, lost interest on amounts wrongfully withheld by Defendant, amounts lost in the Lawsuit due to Defendant's bad faith contact with Third Party and its insurer, and lost time and productivity;

c) For Defendant's tortious interference with Plaintiff's prospective economic relations, an amount exceeding $50,000.00, plus attorney's fees and costs; and

d) For any and all such other relief, whether at law or in equity, as this Court deems just and proper.

Dated this 18th day of July, 2016.

Respectfully submitted,

LOGAN & LOWRY, LLP
101 South Wilson Street
P. O. Box 558
Vinita, OK 74301
(918) 256-7511
(918) 256-3187 (*Fax*)
mtorrone@loganlowry.com
rolsen@loganlowry.com

Attorneys for Plaintiff, Margaret Dey

By:   /s/ Michael T. Torrone
       Michael T. Torrone, O.B.A. #21848